## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 76-6-13 Vtec |

| | |
|---|---|
| J.R. Vinagro Corp. Waste Transporter<br>Application | DECISION ON THE MERITS |

J.R. Vinagro Corporation (Appellant) appeals the June 13, 2013 decision by the Vermont Agency of Natural Resources (ANR) denying Appellant's Vermont Commercial Waste Hauler Permit Application. Appellant raises a single question to this Court:

> Whether the Waste Management & Prevention Division of the Vermont Department of Environmental Conservation wrongfully denied Appellant's October 22, 2012 application for a waste transportation permit.

At the outset of this matter, ANR moved to require Appellant to clarify this question on the grounds that it is vague and overbroad and fails to adequately define the scope of the appeal. In a September 13, 2013 Entry Order, we denied ANR's motion, noting that we interpret Appellant's question to ask whether Appellant's October 24, 2012 application for a waste hauler permit should be granted.

ANR also filed a pre-trial motion for summary judgment, asking the Court to find as a matter of law that: (1) Appellant is disqualified under 10 V.S.A. § 6605f(a)(2); and (2) Appellant has failed to establish rehabilitation under § 6605f(f). Appellant opposed the motion, arguing that a factual dispute existed regarding both issues. In an April 7, 2014 decision, we denied ANR's motion, concluding that we had insufficient undisputed facts before us, including facts regarding rehabilitation under § 6605f(f), to determine that Appellant's application must be denied under § 6605f(a)(2).

Based upon the evidence received at trial, the Court renders the following Findings of Fact.

### Findings of Fact

1. On October 24, 2012, J.R. Vinagro Corporation (Appellant) applied for a commercial waste hauler permit with the Waste Management & Prevention Division of the Department of Environmental Conservation of the Vermont Agency of Natural Resources (ANR).

2. In a November 30, 2012 letter, ANR notified Appellant of its intent to deny the application pursuant to 10 V.S.A. § 6605f(a)(2) based on multiple past environmental violations.

3. ANR's letter notified Appellant of its opportunity to demonstrate its rehabilitation pursuant to § 6605f(f).

1

4.      In a December 20, 2012 letter, Appellant asked ANR to reconsider its intent to deny the permit application.  To show rehabilitation, Appellant explained that it did not actually commit all of the disclosed violations and that certain subcontractors or other entities were responsible for some of the disclosed violations.[1]  Appellant also explained that it had hired several employees with experience in environmental compliance.

5.      On May 15, 2013, ANR notified Appellant that it had failed to establish rehabilitation and formally denied the application.

6.      Appellant timely appealed ANR's decision to this Court.

7.      ANR published a document entitled "Guidance for Background Review Analysis of Environmental Violations Under 10 V.S.A. § 6605f(a)(2)" on August 11, 1999 (1999 ANR Guidance document).

8.      Beginning around 2007, Appellant assembled a team responsible for Appellant's compliance with environmental laws, environmental regulations, and permit conditions.  This team is:

   a.   Dana J. Zewinski, in-house environmental engineer;

   b.   Matthew H. Leonard, safety director, and Mr. Leonard's assistant, Brianna Riccio;

   c.   Donna L. Caisse, Esq., in-house lawyer; and

   d.   Appellant retains CDM Engineering, an engineering consulting firm, for specific projects.

9.      Pursuant to current practices, all of Appellant's environmental issues or compliance concerns are directed to Mr. Zewinski, and he determines any additional staffing needs.

10.     In earlier times, Appellant relied on former employee Darlene Chapdelaine and an informal process for considering environmental issues and compliance concerns.

11.     Appellant has undertaken several activities in Connecticut, Massachusetts, and Rhode Island resulting in violations of environmental statutes, rules, orders, certifications, or permits.  Some, but not all[2], of these activities are as follows:

12.     Connecticut:

   a.   Appellant owns a parcel on Snake Meadow Road in the Towns of Plainfield and Sterling, Connecticut; part of the property is in Plainfield, and part of the property is in the Town of Sterling, Connecticut.

---

[1] Under applicable state law, the violations at issue were imputed to Appellant.  Appellant has not contested that the violations were imputed to it as a matter of law.

[2] ANR cites to additional violations in support of its decision that Appellant is disqualified under §6605(f).  These include a criminal environmental matter and resulting debarment of Appellant's President, Joseph R. Vinagro, and certain of his or his father's other companies, brought by the United States Environmental Protection Agency; other alleged state environmental violations related to the same operation; and a situation involving Appellant's establishment of a construction and demolition debris processing facility and transfer station in Johnston, Rhode Island.  However, because these additional events are not necessary to resolve the legal issues in this matter, we need not include them in our findings of fact.

b. In or before 2006, Appellant developed an area at its Snake Meadow Road property with clean, processed wood in order to level the area for construction of a compost pad. The developed area was located in the Town of Plainfield. Appellant intended to develop in the Town of Sterling.

c. The State of Connecticut investigated the development and concluded that the processed wood was construction and demolition debris which is considered a solid waste. The development therefore constituted the establishment of a solid waste disposal facility without the necessary state permit or approval in violation of state regulations.

d. On November 2, 2006, the Connecticut Department of Environmental Protection issued a Notice of Violation to Joseph R. Vinagro.

e. Pursuant to a September 3, 2008 Consent Order, Appellant removed all of the solid waste, installed groundwater monitoring wells, and monitored groundwater quality for one year.

13. Massachusetts:

a. 2010:

i. On April 14, 2010, Massachusetts Department of Environmental Protection (MDEP) issued Appellant a Notice of Noncompliance for failure to properly label asbestos-containing waste containers in violation of 310 CMR 7.15(e)1.a.

ii. Remedial action required for this violation included submission of receipts for proper disposal of the asbestos.

iii. Appellant did not challenge the Notice of Noncompliance and completed the remedial action.

b. June 2011:

i. On June 29, 2011, MDEP issued Appellant a Notice of Noncompliance for several violations of state asbestos removal/abatement regulations, including the failure to adequately wet the material being removed, failure to label removed asbestos material, and failure to use a seal or air cleaning in containment and decontamination areas.

ii. Pursuant to a consent order, Appellant paid a $2,500 fine for these violations.

c. July 2011:

i. On July 15, 2011, MDEP issued Appellant a Notice of Noncompliance for failure to properly file a demolition notice with the State in advance of undertaking demolition activities in violation of 310 CMR 7.09(2).

3

ii. Remedial action required for this violation included submission of proper demolition notification forms and instituting proper management oversight to ensure similar violations do not reoccur.

iii. **Appellant completed the remedial actions.**

## Conclusions of Law

In this appeal, we review the permit application *de novo*. 10 V.S.A. § 8504(h). This Court does not consider any previous decisions or proceedings below; "rather, we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.); see also Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978) ("A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto.'")). We do not, therefore, defer to ANR's prior determinations.

A commercial waste hauler must obtain a permit in order to transport waste within the State of Vermont. 10 V.S.A. § 6607a(a). If certain disqualifying criteria are met, ANR, or this Court on appeal, must deny an application for a waste hauler permit. 10 V.S.A. § 6005f(a). Under the statute, these disqualifying criteria are separated into two categories: (1) conviction of any item in an enumerated list of disqualifying offenses within the 10 years preceding the application[3]; or (2) the "[commission of] more than one violation of environmental: statutes; rules; orders; certifications; or permits, issued by any jurisdiction, which have the potential to significantly harm the public health, public safety or the environment, giving due consideration to the size and scope of the applicant's business operations." 10 V.S.A. § 6605f(a)(2).

An applicant for a permit covered by § 6605f must make certain disclosures. First, the applicant must disclose "[t]he record of convictions identified in subsection (a)" within the 10 years prior to the date of the application. Id. § 6605f(b)(3). An applicant must also disclose "all civil and administrative penalties issued against the applicant by any state or federal authority, in the five years immediately preceding the filing of the application, which resulted from a finding of violation or assurance of discontinuance, relating to the collection, transportation, treatment, storage, or disposal of solid waste or hazardous waste by the applicant . . . ." Id. § 6605f(b)(4).

---

[3] These offenses are: murder, kidnapping, gambling, robbery, bribery, extortion, arson, burglary, larceny and embezzlement, forgery and fraud, possession and control of drugs and related offenses, trafficking in alcoholic beverages, the federal Racketeer Influenced and Corrupt Organizations Act, criminal provisions of federal antitrust laws related to solid waste, criminal provisions of any federal or state environmental protection laws or rules relating to solid waste, obstruction of justice, securities fraud, alteration of motor vehicle identification numbers, or the unlawful manufacture, purchase, use, or transfer of firearms. 10 V.S.A. § 6605f(a)(1).

ANR does not offer any evidence or assert any basis for disqualification pursuant to § 6605f(a)(1). Rather, our focus is limited to disqualification pursuant to § 6605f(a)(2).

Review Period

Appellant argues that violations outside of the five-year reporting window required by § 6605f(b)(4) for civil and administrative penalties cannot be considered under § 6605f(a)(2). We find no language in the statute to indicate that consideration of disqualifying environmental violations under subsection (a)(2) is limited to those violations that occurred within the five years preceding the application. To the contrary, § 6605f(c) authorizes the department of public safety to verify the information in the application and conduct an investigation. The 1999 ANR Guidance document does not address the review period. The statute provides no time limitation for this investigation, and we will not infer that one exists.

Furthermore, although it is conceivable that violations could be so remote that they do not justify disqualification, we do not face such a possibility here. As established in the above findings, we consider events that took place in 2006 or more recently for our review under § 6605f(a)(2); we conclude that it is reasonable to consider an applicant's compliance history over this eight-year period when reviewing qualification for a commercial waste hauler permit.

§ 6605f(a)(2)

Appellant argues that its past violations did not have the potential to significantly harm the public health, public safety, or the environment. The 1999 ANR Guidance document recognizes that a determination of whether a violation has the potential to significantly harm the environment requires a fact-based case-by-case approach considering the type of waste and type of violation involved. Certain violations, by their very nature, have the potential to significantly harm the environment. Appellant introduced testimony and evidence in an attempt to show that its past activities did not result in actual harm. The statute, however, does not speak of actual harm. Rather, the statute requires that the violations of environmental statutes, rules, orders, certifications, or permits "have the <u>potential to significantly harm</u> the public health, public safety[,] or the environment. § 6605f(a)(2)(emphasis added).

Each of Appellant's actions set forth in the above findings of fact had the potential to significantly harm the public health, public safety, or the environment. First, establishing a solid waste disposal facility without the necessary permits meets this standard. Solid waste has the potential to be toxic and could contain a variety of elements that could negatively impact the environment. A solid waste disposal facility which does not undergo permitting review and approval therefore has the potential to give rise to serious public health problems and land and water pollution.

Asbestos fibers may be released into the air by the disturbance of asbestos-containing material during demolition work. The failure to adequately wet asbestos containing material during removal can

5

cause airborne asbestos. Additionally, the failure to properly label asbestos-containing waste containers increases the risk of improper handling and the possibility of actions causing airborne asbestos. Lastly, the failure to follow proper procedures in containment and decontamination areas again increases the risk of airborne asbestos. Exposure to asbestos creates significant public health and safety concerns.

Lastly, the failure to file demolition notices with appropriate state agencies eliminates the proper and timely regulatory oversight to ensure compliance with environmental laws and regulations and to protect against harm to public health, safety, and the environment.

<u>Finding of Violation or AOD</u>

To disqualify an applicant, the statute requires a finding that the applicant has "committed more than one violation." § 6605f(a)(2). This disqualification section is narrower than the disclosure provisions, which require applicants to disclose all civil and administrative penalties resulting from either a finding of violation or an assurance of discontinuance. § 6605f(b)(4).

Appellant argues that for several of the notices of violation, it entered into consent orders or similar settlements, and therefore, it cannot be concluded that it "committed" a violation. The 1999 ANR Guidance document interprets "committed" to include final orders, party admissions, and agreements including assurances of discontinuance and consent degrees. 1999 ANR Guidance document at II.A.1.

Pursuant to a September 3, 2008 Consent Order, Appellant resolved the issues relating to establishing a solid waste disposal facility in Connecticut without the necessary permits. The Consent Order at paragraph 11 states:

> By agreeing to the issuance of this consent order, the Respondent makes no admission of fact or law with respect to the matters addressed herein other than the facts asserted in paragraph A.1. of this consent order.

(Exhibit 11 at 2). Paragraph A.1 simply identifies the property at issue in the Consent Order which Appellant owns. (Exhibit 11 at 1). Thus, we cannot conclude that Appellant <u>committed</u> the noted violations. Although the 1999 ANR Guidance document interprets "committed" to include consent orders, the September 3 Order specifically and expressly states that Respondent does not admit to violations. Thus, the express reservation controls and the Order cannot form a basis for disqualification.

Similarly, pursuant to a June 29, 2011 Consent Order, Appellant resolved the issues relating to asbestos removal/abatement regulations, including the failure to adequately wet the material being removed, failure to label removed asbestos material, and violations relating to containment and decontamination areas. Paragraph 7 of the June 29 Order states, in pertinent part, that Appellant does not admit <u>or deny</u> the facts or allegations of non-compliance. (Exhibit 19 at 3). Thus, we again cannot conclude that Appellant committed the noted violations based on the June 29 Order.

6

There are two notices of noncompliance from the MDEP which Appellant did not challenge, but for which it undertook corrective measures. These are the April 14, 2010 (failure to properly label asbestos-containing waste containers) and July 15, 2011 (failure to file demolition notice) notices. Based upon these notices, which Appellant did not contest, we find that Appellant has "committed more than one violation." § 6605f(a)(2).

<u>Size and Scope of the Applicant's Business Operations</u>

The 1999 ANR Guidance document provides two alternative analyses for interpreting the legislative requirement that ANR, or this Court on appeal, give "due consideration to the size and scope of the applicant's business operations." One view is that large corporations with broad activities, under the law of averages, are more likely to incur more than one violation, and therefore, such a corporation should not be denied a waste hauler permit. 1999 ANR Guidance document at III.A. The second view is that large corporations have financial resources to employ personnel to prevent violations; as such the corporation should not have any violations. <u>Id</u>. We find the 1999 ANR Guidance document to be of little help in analyzing this clause other than its acknowledgement that the final analysis is on a case-by-case basis. <u>Id</u>.

Based upon the evidence before the Court, it appears that between 2006 and the present time, Appellant's business operations have grown fairly rapidly, with only a few employees early on to the current "team" of employees tasked with environmental compliance. As Appellant's operations have expanded, Appellant has retained additional employees to address environmental compliance. We therefore find that Appellant is working to avoid violations and is not demonstrating a conscious decision to avoid compliance.

Based upon the above findings of fact and our analysis, however, we conclude that Appellant has committed more than one violation of environmental statutes, rules, orders, certifications, or permits which have the potential to significantly harm the public health, public safety, or the environment. We must, therefore, conclude that Appellant is disqualified based on § 6605f(a)(2).

<u>Rehabilitation</u>

Having concluded that Appellant is disqualified under subsection § 6605f(a)(2), we next consider whether Appellant has demonstrated rehabilitation under § 6605f(f). ANR argues that Appellant has not adequately demonstrated rehabilitation, while Appellant asserts that it has done so.

The 1999 ANR Guidance document provides some insight to review potential rehabilitation by individuals and corporations. Among the factors to consider are "the restoration of lawful conduct" and the systematic efforts, appropriate to the size and nature of the corporation's business, to prevent, detect, and correct violations. 1999 ANR Guidance document at III.B(1)–(2). Generally, rehabilitation

may be demonstrated through adding staff, implementing procedures, responding to and correcting violations, and maintaining business operations without violations.

As discussed above, Appellant has added several staff to address environmental compliance, favoring a finding of demonstrated rehabilitation. This environmental compliance team includes an in-house environmental engineer, Mr. Zewinski, who determines staffing needs on a project-by-project basis. Appellant also retains CDM Engineering, an engineering consulting firm, for certain projects. Although Appellant is not free of recent violations, the evidence before the Court shows that Appellant has responded to and corrected its violations.

ANR argues that not enough time has elapsed to know whether Appellant has successfully rehabilitated. While we appreciate ANR's concern, we see no time requirement within 10 V.S.A. §6605f(f) and the 1999 ANR Guidance document does not speak to timing.

We therefore conclude that Appellant has sufficiently demonstrated rehabilitation pursuant to 10 V.S.A. §6605f(f).

Revocation

In response to ANR's concerns relating to Appellant's application for a commercial waste hauler permit, we note that pursuant to § 6605f(g), ANR may revoke a waste hauler permit upon learning of violations committed subsequent to issuance of a certification. See § 6605f(g).

**Conclusion**

Based upon the above findings of fact, and for the reasons discussed above, we conclude that Appellant, or its principal Joseph R. Vinagro, has committed more than one environmental violation which had the potential to significantly harm the public health, public safety, or the environment. 10 V.S.A. § 6605f(a)(2). We also conclude, however, that Appellant has demonstrated rehabilitation under § 6605f(f). Thus, Appellant is entitled to a permit as a commercial waste hauler pursuant to 10 V.S.A. § 6607a.

This matter is remanded to ANR for the ministerial act of issuing a commercial waste hauler permit to Appellant pursuant to 10 V.S.A. § 6607a.

A Judgment Order accompanies this Decision. This concludes this matter.

Electronically signed on August 22, 2014 at 10:08 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

8